T.C. Memo. 1998-457


UNITED STATES TAX COURT


CHAR-LIL CORPORATION, Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent


Docket No. 4084-97.          Filed December 30, 1998.


<u>Charles Norman Woodward</u>, for petitioner.

<u>Ann L. Darnold</u>, for respondent.


MEMORANDUM FINDINGS OF FACT AND OPINION

WHALEN, <u>Judge</u>:  Respondent determined the following

deficiencies in and additions to petitioner's income tax:

| | | Additions to Tax | |
| Year | Deficiency | Sec. 6651(a)(1) | Sec. 6662(a) |
| 1989 | $15,995 | $3,492.50 | $3,199.00 |
| 1990 | 11,825 | -- | 2,365.00 |
| 1991 | 13,261 | -- | 2,652.20 |

| | | | |
|------|--------|-----|----------|
| 1992 | 37,645 | -- | 7,529.00 |
| 1993 | 48,752 | -- | 9,750.40 |
| 1994 | 12,173 | -- | 2,434.60 |

All section references are to the Internal Revenue Code in effect during the years in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure, unless otherwise indicated.

The issues for decision are: (1) Whether petitioner is subject to the personal holding company tax imposed by section 541 for the years in issue; (2) whether petitioner incurred passive activity losses, as defined by section 469(d), in 1992 and 1993, that are disallowed as deductions in those years, as determined by respondent; and (3) whether petitioner is liable for the accuracy-related penalty under section 6662(a) because of a substantial understatement of income tax for each of the years in issue.

FINDINGS OF FACT

Petitioner, an Oklahoma corporation, maintained its principal place of business in Lawton, Oklahoma, at the time the instant petition was filed on its behalf. Petitioner was incorporated on December 15, 1976, and commenced business as of January 1, 1977. The articles of incorporation described the purposes for which the corporation was formed as follows:

ARTICLE FOUR

The purposes for which this corporation is formed are:  To construct, buy, sell, trade, lease, rent or otherwise engage in the obtaining of residential and commercial property of any kind as an investment by holding for resale or to lease or rent at a profit.  To engage in the construction or destruction of any such building.

To engage in any business enterprise of a retail or wholesale nature that may be operated from or in any of the real estate owned by the corporation or any other business enterprise lawful in the State of Oklahoma, and to hold title in its own name of real estate used or to be used in the lawful business of the corporation and to do all things necessary to carry out the purposes of this corporation.

During the years in issue, there were 2,000 shares of petitioner's stock outstanding.  All of the stock was owned by Mr. Charles McKelvey, his wife, Lilly, and his daughter, Kay, as follows:

         Mr. Charles McKelvey       1,800 shares
         Ms. Lilly McKelvey           160 shares
         Ms. Kay McKelvey              40 shares

During the years in issue, Mr. McKelvey was petitioner's president.  His wife was petitioner's secretary and treasurer, and his daughter was vice president.  They also composed petitioner's board of directors.

On January 1, 1977, Mr. McKelvey transferred nine pieces of real estate to petitioner in exchange for stock

in the corporation. Thereafter, petitioner acquired eight other pieces of real estate. From 1977 through January 24, 1989, petitioner disposed of 12 of those properties. From January 24, 1989, through 1994, petitioner neither purchased nor sold any real property. Set out below is a schedule of petitioner's acquisitions and dispositions of real property:

Char-Lil Corporation
Schedule of Acquisitions and Sales of Real Property

| Description of Real Property | Date Acquired | Cost or Other Basis | Date Sold | Sale Price | Accum. Depr. | Years Held |
|---|---|---|---|---|---|---|
| 613 Lee, Lawton | [1]1/01/77 | $30,100 | 7/29/83 | $40,000 | $13,678 | 6.5 |
| 509 Lee, Lawton | [1]1/01/77 | 25,925 | 1/02/86 | 44,529 | 21,971 | 9.0 |
| 602 - 616 Lee, Lawton | [1]1/01/77 | 300,995 | 9/29/86 | 500,000 | 100,678 | 9.5 |
| 2116 Fort Sill Blvd., Lawton | [1]1/01/77 | 331,756 | [2] | -- | 225,023 | 18.5 |
| 2112 Fort Sill Blvd., Lawton 1108 Lincoln Blvd., Lawton | [1]1/01/77 | 144,428 | [2] | -- | 86,849 | 18.5 |
| 515 Lee Blvd., Lawton | [1]1/01/77 | 28,000 | [2] | -- | 28,000 | 18.5 |
| 1207 S. 6th, Lawton | [1]1/01/77 | 10,000 | [2] | -- | 10,000 | 18.5 |
| Commercial Property, Fletcher | 2/01/77 | 53,155 | 9/01/82 | 150,000 | 16,792 | 5.5 |
| 626 D Ave., Lawton | 7/01/81 | 116,525 | 8/19/82 | 175,000 | 4,729 | 1.0 |
| 608 D Ave., Lawton | 7/01/81 | 115,000 | 9/01/82 | 175,000 | 4,500 | 1.0 |
| 802 S.E. 3d, Lawton | 3/01/82 | 12,500 | 7/01/85 | 27,500 | [3]-0- | 3.0 |
| 802 S.E. 3d, Lawton | 3/01/82 | 163,388 | 12/15/87 | 85,000 | 74,484 | 5.5 |
| 45th & E. Gore, Lawton | 4/01/83 | 315,743 | 1/24/89 | 230,000 | 126,460 | 5.5 |
| Sheridan & Hoover, Lawton | 12/01/83 | 212,845 | 1/24/89 | 155,000 | 63,798 | 5.0 |
| 6302-04 Cache Rd., Lawton | [1]1/01/77 | 282,488 | 10/25/88 | 250,000 | 82,164 | 11.5 |
| 38th & Lee (lots), Lawton | 1/01/86 | 23,250 | 5/01/86 | 30,687 | [3]-0- | 0.5 |

[1]Date of incorporation. Cost basis represents sec. 351 transfer from majority shareholder.
[2]Property was owned by petitioner as of Dec. 31, 1994.
[3]Undeveloped land.

The following is a brief description of Mr. McKelvey's and petitioner's activity with respect to each of the above properties.

613 Lee, Lawton:  Mr. McKelvey purchased this property from an estate.  He tore down a house that was on the property and built a building which he leased to a business that operated a bar.  On January 1, 1977, Mr. McKelvey contributed the property to petitioner.  On July 29, 1983, petitioner sold the property to Mr. Billy Caldwell, Mr. McKelvey's and petitioner's accountant.  Petitioner did not engage a real estate agent in connection with the sale.  Petitioner financed the sale by taking Mr. Caldwell's promissory note for part of the purchase price.

509 Lee, Lawton:  Mr. McKelvey purchased this property and tore down a house that was on it.  He built a commercial building on the property which he leased for $350 per month to an individual, Mr. Mike Harrison, for use as an alignment shop.  On January 1, 1977, Mr. McKelvey contributed the property to petitioner.  When petitioner proposed to increase the tenant's rent to $500 per month, Mr. Harrison agreed to purchase the property.  Petitioner did not engage a real estate agent in connection with the sale to Mr. Harrison.

602-616 Lee, Lawton:  These properties compose a strip shopping center.  Initially, Mr. McKelvey purchased two lots and built a store for his business.  He then added

properties. On January 1, 1977, Mr. McKelvey contributed the shopping center to petitioner. After Mr. McKelvey and petitioner had rented the shopping center for some time, it was in need of renovations that would cost approximately $200,000. Mr. McKelvey decided, on petitioner's behalf, to sell the properties, and he engaged a real estate agent to assist in the sale. Petitioner sold the properties on September 29, 1986, to Ashworth, Inc.

2116 Fort Sill Boulevard, Lawton: Mr. McKelvey purchased this property and tore down a house that was on it to make way for a building which he leased. On January 1, 1977, Mr. McKelvey contributed the property to petitioner. In 1995, petitioner sold the property to an individual who had worked for Mr. McKelvey, Mr. Jimmy Parker, for $290,000. Petitioner financed the sale of the property. Petitioner did not engage a real estate agent in connection with the sale.

2112 Fort Sill Boulevard and 1108 Lincoln Boulevard: Mr. McKelvey purchased a building at 2112 Fort Sill Boulevard and a house on a contiguous property at 1108 Lincoln Boulevard from a friend. On January 1, 1977, he contributed the properties to petitioner. Petitioner leased the properties to Mr. Rick Taylor. In 1985 or 1986, petitioner renovated the building, and in 1995, petitioner

sold the properties to Mr. Taylor. Petitioner financed the sale. Petitioner did not retain a real estate agent in connection with this sale.

515 Lee Boulevard, Lawton and 1207 S. 6th, Lawton: The property at 515 Lee Boulevard was improved with a house, and the property at 1207 S. 6th was improved with a garage and an apartment. Mr. McKelvey purchased the properties and tore down the house and the garage and built a service station for lease to Champlin Oil. On January 1, 1977, Mr. McKelvey contributed the properties to petitioner. Recently, petitioner tore down the service station and built a new building for lease to a tenant who operates a pawn shop. Petitioner still owns these properties.

Commercial Property, Fletcher: Petitioner acquired this property in February 1977. It was improved with a store building. On September 1, 1982, petitioner sold the property to a person who had worked for Mr. McKelvey. Petitioner financed the sale of the property. Petitioner did not retain a real estate agent in connection with the sale.

626 D Avenue, Lawton: Petitioner acquired this property at an auction on July 1, 1981. Shortly there-after, petitioner listed the property with a real estate

agent and sold it on August 19, 1982, to a local radio station in Lawton, KLAW.  Petitioner financed the sale.

608 D Avenue, Lawton:  Petitioner acquired this property at auction on July 1, 1981, and, shortly thereafter, listed it for sale with a real estate agent, Finley Properties.  On September 1, 1982, petitioner sold the property to Mr. Billy Reed.  Petitioner financed the sale of the property.

802 S.E. 3d, Lawton (Two Properties):  Petitioner purchased two properties from Finley Properties that were leased to Ensco Oil.  After 2 years, the lessee "folded up and moved".  The two properties are composed of five lots, three of which were vacant, and two of which were improved with a building.  After the properties were vacant for approximately 3 years, petitioner listed them for sale with a real estate agent and on July 1, 1985, sold the three vacant lots to a bakery.  On December 15, 1987, petitioner sold the building to Mr. Kent Wallar.

45th & E. Gore, Lawton:  On April 1, 1983, petitioner purchased this unimproved property from Champlin Oil Co. and built a store on the property.  Petitioner leased the store for some time and on January 24, 1989, sold the property to Mr. Stanley Booker.  Petitioner financed the

sale of the property. Petitioner did not engage a real estate agent in connection with this sale.

Sheridan & Hoover, Lawton: Petitioner purchased this property at auction on December 1, 1983. It was improved with a car wash which petitioner tore down. Petitioner built a commercial building on the property which it leased until it sold the property to Mr. Stanley Booker on December 24, 1989. Petitioner financed this sale. Petitioner did not engage a real estate agent in connection with the sale.

6302-04 Cache Road, Lawton: Mr. McKelvey purchased this property which was improved with a one-bay service station. He tore down the service station and built a commercial building for a specific tenant. On January 1, 1977, Mr. McKelvey transferred the property to petitioner. Petitioner continued to lease the property until October 25, 1988, when it sold it to Mr. Stanley Booker. Petitioner financed this sale. Petitioner did not engage the services of a real estate agent in connection with the sale.

38th & Lee (Lots), Lawton: Petitioner purchased several vacant lots in a doctors' complex on January 1, 1986. Shortly thereafter, petitioner listed the property

for sale with a real estate agent, Mr. Bill Clements, and sold the property on May 1, 1986.

Petitioner paid no dividends during any of the years in issue. Petitioner paid no dividends after the close of any of the taxable years in issue that could be eligible for the election in section 563(b). Finally, petitioner did not make a consent dividend pursuant to section 565 during any of the years in issue.

For Federal income tax purposes, petitioner computed taxable income using the cash receipts and disbursements method of accounting and the calendar year. Petitioner filed timely returns on Form 1120, U.S. Corporation Income Tax Return, for each of the years in issue, except for the return for 1989, which was due on September 15, 1990, but was not filed until August 12, 1991.

Petitioner's returns for 1989 through 1994 report the following income, deductions, and taxable income:

| Petitioner's Returns | 1989 | 1990 | 1991 | 1992 | 1993 | 1994 |
|---|---|---|---|---|---|---|
| Interest | $137,367.70 | $128,743.28 | $124,298.52 | $119,573.90 | $114,634.00 | $111,817.00 |
| Gross rents | 52,572.00 | 53,715.00 | 52,292.26 | 48,633.00 | 42,775.00 | 45,200.00 |
| Capital gain net income (Schedule D) | 20,546.42 | 59,739.59 | 9,508.23 | 10,364.34 | 11,279.00 | 12,851.00 |
| Net gain or (loss from Form 4797) | 38,532.43 | -0- | -0- | -0- | -0- | -0 - |
| Total income | 249,018.55 | 242,197.87 | 186,099.01 | 178,571.24 | 168,688.00 | 169,868.00 |
| Compensation of officers | 68,895.00 | 28,900.00 | -0- | -0- | 4,100.00 | 39,000.00 |
| Salaries and wages | | 36,000.00 | 38,250.00 | 39,750.00 | 39,750.00 | -0- |
| Repairs | 3,401.81 | 3,842.12 | 972.32 | 2,043.20 | 825.87 | 4,570.92 |
| Taxes | 17,016.38 | 7,076.76 | 24,427.67 | 8,651.66 | 14,537.41 | 18,660.02 |
| Interest | 26,730.81 | 19,606.99 | 18,450.48 | 8,136.20 | 3,963.54 | 15,497.83 |
| Depreciation | 29,389.44 | 24,033.68 | 20,474.72 | 23,520.07 | 25,867.58 | 23,702.00 |
| Other deductions | | | | | | |
| Auto expense | 1,754.34 | 868.65 | 1,177.59 | 1,417.00 | 1,456.29 | 177.50 |
| Electricity | 93.20 | -- | -- | -- | -- | -- |
| Insurance | 1,484.60 | 1,980.40 | 1,904.00 | 1,699.00 | 1,913.00 | 2,827.00 |
| Labor | 3,247.47 | 7,578.46 | 6,031.70 | 5,869.00 | 6,698.33 | 5,582.50 |
| Legal and accounting | 3,363.50 | 50.00 | 3,000.00 | 2,095.50 | 1,500.00 | 1,558.00 |
| Miscellaneous | 377.95 | -- | 2,390.00 | 627.31 | 1,321.69 | 78.76 |
| Supplies | 41.92 | -- | 50.53 | 389.10 | 171.53 | 231.24 |
| Telephone | 394.88 | 360.47 | 282.79 | 394.99 | 517.09 | 705.50 |
| Yard work | 2,779.98 | 2,475.00 | 2,700.00 | 3,589.96 | 2,847.92 | 2,745.27 |
| Management fees | -- | -- | -- | -- | -- | 5,100.00 |
| Contribution | -- | -- | -- | -- | -- | 415.00 |
| Total deductions | 158,971.28 | 132,772.53 | 120,111.80 | 98,182.99 | 105,470.25 | 120,851.54 |
| Taxable income | 90,047.27 | 109,425.34 | 65,987.21 | 80,388.25 | 63,217.75 | 49,016.46 |

Except for small amounts paid by a bank and by the
Internal Revenue Service, the interest income reported by
petitioner consists of interest paid on promissory notes
accepted by petitioner to finance its sale of various
parcels of real property.  We refer to these obligations as
purchase money obligations.  Set out below is a schedule of
the interest income reported by petitioner during the years
1989 through 1994, showing the payor of the interest and
the property with respect to which the interest was paid:

| Payor | Property | 1989 | 1990 | 1991 | 1992 | 1993 | 1994 |
|---|---|---|---|---|---|---|---|
| Billy Caldwell | 613 Lee, Lawton | $3,506.33 | $3,388.42 | $3,258.20 | $3,114.32 | $2,955.40 | $2,779.80 |
| Mike Harrison | 509 Lee, Lawton | | 4,923.51 | | 4,649.32 | 4,485.64 | 4,301.17 |
| Ashworth, Inc. | 602-616 Lee, Lawton | 5,037.91 | 23,281.57 | 4,794.59 | 21,941.78 | 21,173.40 | 20,330.87 |
| | 2116 Fort Sill Blvd., Lawton | 23,864.37 | -- | 22,642.54 | -- | -- | -- |
| | 2112 Fort Sill Blvd., Lawton | -- | -- | -- | -- | -- | -- |
| | 1108 Lincoln Blvd., Lawton | -- | | -- | | | |
| | 515 Lee Blvd., Lawton | | -- | | -- | -- | -- |
| | 1207 S. 6th, Lawton | -- | -- | -- | -- | -- | -- |
| Marian Booker | Commercial Property, Fletcher | -- | 3,071.75 | -- | -- | -- | -- |
| KLAW | 626 D Ave., Lawton | 10,863.06 | 11,219.89 | -- | 11,082.70 | 9,582.40 | 10,538.88 |
| Billy Reed | 608 D Ave., Lawton | 12,706.57 | 13,740.70 | 12,677.03 | 12,556.05 | 11,859.06 | 11,081.37 |
| Finley Commercial Property, Inc. | 802 S.E. 3d, Lawton | 14,242.55 | | 13,180.75 | | | |
| Finley Commercial Property, Inc. | 802 S.E. 3d, Lawton | | 7,170.61 | | 6,836.74 | 6,643.16 | 6,429.30 |
| Stanley Booker | 45th & E. Gore, Lawton | | -0- | | -0- | 21,013.17 | 20,424.56 |
| Stanley Booker | Sheridan & Hoover, Lawton | 7,314.21 | -0- | 7,011.99 | -0- | 14,161.04 | 13,764.35 |
| Stanley Booker | 6302-04 Cache Rd., Lawton | -0- | 61,946.83 | -0- | 59,392.99 | 22,761.17 | 22,087.30 |
| | 38th and Lee (lots), Lawton | -0- | -- | -0- | -- | -- | -- |
| Cache Rd. Bank | | 59,832.70 | -- | 60,733.42 | -- | -- | 78.76 |
| Internal Revenue | | -- | -- | -- | -- | 23.28 | .80 |
| | | -- | | -- | | | |
| | | -- | 128,743.28 | -- | 119,573.90 | 114,657.72 | 111,817.16 |
| | | 137,367.70 | | | | | |
| | | | | 124,298.52 | | | |

Each of the returns filed by petitioner during the years in issue includes Forms 6252, Installment Sale Income, on which petitioner computes the installment sale income with respect to the principal payments received during the year on each of its purchase money obligations. The installment sale income reported by petitioner is summarized in the following schedule:

| Form 6252 Installment Sale Income | Property | 1989 | 1990 | 1991 | 1992 | 1993 | 1994 |
|---|---|---|---|---|---|---|---|
| Billy Caldwell | 613 Lee, Lawton | $663.65 | $733.16 | $809.93 | $894.74 | $989.00 | $1,092.00 |
| Mike Harrison | 509 Lee, Lawton | 732.95 | 825.90 | 930.65 | 1,048.68 | 1,181.00 | 1,332.00 |
| Ashworth, Inc. | 602-616 Lee, Lawton | 3,119.14 | 3,420.22 | 3,750.34 | 4,112.35 | 4,509.00 | 4,944.00 |
| | 2116 Fort Sill Blvd., Lawton | -- | -- | -- | -- | -- | -- |
| | 2112 Fort Sill Blvd., Lawton | -- | -- | -- | -- | -- | -- |
| | 1108 Lincoln Blvd., Lawton | | | | | | |
| | 515 Lee Blvd., Lawton | -- | -- | -- | -- | -- | -- |
| | 1207 S. 6th, Lawton | -- | -- | -- | -- | -- | -- |
| Marian Booker | Commercial Property, Fletcher | 12,885.46 | 51,392.98 | -- | -- | -- | -- |
| KLAW | 626 D Ave., Lawton | 1,386.54 | 1,398.18 | 1,825.68 | 1,869.31 | 1,885.00 | 2,461.00 |
| Billy Reed | 608 D Ave., Lawton | 1,324.90 | 1,478.21 | 1,649.28 | 1,840.12 | 2,053.00 | 2,291.00 |
| Finley Commercial Property, Inc. | 802 S.E. 3d, Lawton | | | | | | |
| Finley Commercial Property, Inc. | 802 S.E. 3d, Lawton | -- | -- | -- | -- | -- | -- |
| Stanley Booker | 45th & E. Gore, Lawton | 122.99 | 147.61 | 163.07 | 180.14 | 199.00 | 220.00 |
| Stanley Booker | Sheridan & Hoover, Lawton | -- | -- | -- | -- | -- | -- |
| Stanley Booker | 6302-04 Cache Rd., Lawton | 310.79 | 343.33 | 379.28 | 419.00 | 463.00 | 511.00 |
| | 38th & Lee (lots), Lawton | -- | -- | -- | -- | -- | -- |
| Total | | 20,546.42 | 59,739.59 | 9,508.23 | 10,364.34 | 11,279.00 | 12,851.00 |

Petitioner reported the aggregate installment sale income for each of the years in issue on Form 4797, Sales of Business Property, as "section 1231 gain from installment sales from Form 6252". Each of the above totals was also reported on Schedule D, Capital Gains and Losses, as long-term capital gain.

During the audit of petitioner's returns, Mr. McKelvey told respondent's agent that petitioner held the real properties that it owned for rental, but that petitioner would sell one of the properties when a good deal came along. When any of its properties was for sale, petitioner did not advertise either in newspapers or by a sign in front of the property. Petitioner did not regularly or

consistently retain real estate agents to assist in the sale of its properties.

Mr. McKelvey also told respondent's agent during the audit that most of the persons who had purchased any of petitioner's properties had previously been tenants and he knew them to be good payors so that it required very little effort to collect payments from them after the purchase. Furthermore, Mr. McKelvey told the agent that petitioner's operating expenses related to the rental properties.

In the subject notice of deficiency, respondent determined that during each of the years in issue, petitioner was a personal holding company, as defined by section 542. The notice of deficiency states as follows:

> Since over 50 [sic] percent of your adjusted ordinary gross income reported for the taxable years 1989, 1990, 1991, 1992, 1993, and 1994 was from dividends, rents and interest, you qualified as a personal holding company as defined by Section 542 of the Internal Revenue Code. Therefore, you were subject to the personal holding company tax imposed by Section 541 of the Code.

Respondent also disallowed a portion of the deductions claimed by petitioner for the years 1992 and 1993 on the ground that the total deductions claimed for each of those taxable years exceeded the income from petitioner's passive

activities.  Respondent's notice of deficiency states as follows:

> The total deductions of $98,183.00 shown on your return are reduced by $39,186.00 because to the extent that the total deductions from passive activities exceed the total income from such activities for the tax year, the excess is not allowed as a deduction for that year.  Therefore, your taxable income for the taxable year ended December 31, 1992 is increased $39,186.00.

> The total deductions of $105,470.00 shown on your return are reduced by $51,416.00 because to the extent that the total deductions from passive activities exceed the total income from such activities for the tax year, the excess is not allowed as a deduction for that year.  Therefore, your taxable income for the taxable year ended December 31, 1993 is increased $51,416.00.

Respondent determined that petitioner is liable for the additions to tax under section 6651(a)(1) for 1989 because petitioner's 1989 return was not timely. Petitioner does not challenge this adjustment.  Finally, respondent determined that petitioner is liable for the addition to tax under section 6662(a) for the years in issue because of a substantial understatement of tax with respect to each of those years.

OPINION

Personal Holding Company Tax

The first issue for decision is whether petitioner is subject to the personal holding company tax imposed by

section 541 for the years in issue.  Section 542(a) defines

personal holding company as follows:

> SEC. 542(a).  General Rule.--For purposes
> of this subtitle, the term "personal holding
> company" means any corporation (other than a
> corporation described in subsection (c)) if--
>
> (1) Adjusted ordinary gross income
> requirement.--At least 60 percent of
> its adjusted ordinary gross income (as
> defined in section 543(b)(2)) for the
> taxable year is personal holding
> company income (as defined in section
> 543(a)), and
>
> (2) Stock ownership requirement.--
> At any time during the last half of the
> taxable year more than 50 percent in value
> of its outstanding stock is owned, directly
> or indirectly, by or for not more than 5
> individuals.  For purposes of this
> paragraph, an organization described in
> section 401(a), 501(c)(17), or 509(a) or a
> portion of a trust permanently set aside or
> to be used exclusively for the purposes
> described in section 642(c) or a
> corresponding provision of a prior income
> tax law shall be considered an individual.

Petitioner concedes that it meets the stock ownership

requirement of section 542(a)(2) during the last half

of each of the subject taxable years.  The issue is

whether petitioner meets the adjusted ordinary gross income

requirement of section 542(a)(1) during each of the subject

years.

For purposes of the adjusted ordinary gross income

requirement, section 543(a) defines "personal holding

company income" generally to include dividends; interest; royalties; rents; mineral, oil, and gas royalties; copyright royalties; produced film rents; amounts received as compensation for the use of corporate property by certain large shareholders; amounts received under a contract to furnish personal services; and certain amounts relating to estates and trusts.  The provision dealing with rents, section 543(a)(2), provides that the term "personal holding company income" means the portion of the adjusted gross income which consists of:

  (2) Rents.--The adjusted income from rents; except that such adjusted income shall not be included if--

    (A) such adjusted income constitutes 50 percent or more of the adjusted ordinary gross income, and

    (B) the sum of--

      (i) the dividends paid during the taxable year (determined under section 562),

      (ii) the dividends considered as paid on the last day of the taxable year under section 563(c)[(d)] (as limited by the second sentence of section 563(b)), and

      (iii) the consent dividends for the taxable year (determined under section 565),

  equals or exceeds the amount, if any, by which the personal holding company income for the taxable year (computed without regard to this paragraph and paragraph (6), and computed by including as personal holding company income copyright royalties and the adjusted income from mineral, oil, and gas royalties) exceeds 10 percent of the ordinary gross income.

Thus, according to section 543(a)(2), adjusted income from rents is taken into account in computing personal holding company income if it amounts to less than 50 percent of the corporation's adjusted ordinary gross income.  See sec. 543(a)(2).  If adjusted income from rents amounts to 50 percent or more of the corporation's adjusted ordinary gross income, and a condition involving the corporation's dividends for the year is met, then adjusted income from rents is not taken into account in computing personal holding company income.  See sec. 543(a)(2).

The phrase "adjusted income from rents" is defined by section 543(b)(3) as follows:

> (3) Adjusted income from rents.--The term "adjusted income from rents" means the gross income from rents, reduced by the amount subtracted under paragraph (2)(A) of this subsection [i.e., deprecia-tion, property taxes, interest expense, and rent]. For purposes of the preceding sentence, the term "rents" means compensation, however designated, for the use of, or right to use, property, and the interest on debts owed to the corporation, to the extent such debts represent the price for which real property held primarily for sale to customers in the ordinary course of its trade or business was sold or exchanged by the corporation; but such term does not include--
>
>> (A) amounts constituting personal holding company income under subsection (a)(6),
>>
>> (B) copyright royalties (as defined in subsection (a)(4)),
>>
>> (C) produced film rents (as defined in subsection (a)(5)(B)),

        (D) compensation, however designated, for the use of, or the right to use, any tangible personal property manufactured or produced by the taxpayer, if during the taxable year the taxpayer is engaged in substantial manufacturing or production of tangible personal property of the same type, or

        (E) active business computer software royalties (as defined in subsection (d)).

Based upon the above, the narrow question at issue in this case is whether the interest income received by petitioner in connection with the purchase money obligations taken to facilitate its sale of real properties is included in the term "rents" as defined by section 543(b)(3).  This depends upon whether the purchase money obligations on which the interest was paid are "debts" which represent "the price for which real property held primarily for sale to customers in the ordinary course of its trade or business was sold or exchanged by the corporation".  Sec. 543(b)(3).

The language of section 543(b)(3), "property held primarily for sale to customers in the ordinary course of its trade or business", is nearly identical to the language of section 1221(1).  Accordingly, this and other courts have used the cases decided under section 1221(1) for guidance in deciding whether section 543(b)(3) applied. See Kent Indus. Corp. v. Commissioner, 25 T.C. 215, 219 (1955).  The same should also be true of the cases under

section 1231(b)(1)(B), which contains nearly identical language. See Cottle v. Commissioner, 89 T.C. 467, 485-486 (1987).

In deciding whether a particular piece of real property is held for sale to customers in the ordinary course of a taxpayer's trade or business, courts have considered the following factors:

> (1) the nature and purpose of the acquisition of the property and the duration of the ownership; (2) the extent and nature of the taxpayer's efforts to sell the property; (3) the number, extent, continuity and substantiality of the sales; (4) the extent of subdividing, developing, and advertising to increase sales; (5) the use of a business office for the sale of the property; (6) the character and degree of supervision or control exercised by the taxpayer over any representative selling the property; and (7) the time and effort the taxpayer habitually devoted to the sales. * * * [United States v. Winthrop, 417 F.2d 905, 910 (5th Cir. 1969).]
>
> See also Major Realty Corp. and Subsidiaries v. Commissioner, 749 F.2d 1483, 1488 (11th Cir. 1985), affg. and revg. on another issue a Memorandum Opinion of this Court; Daugherty v. Commissioner, 78 T.C. at 629. * * *

Cottle v. Commissioner, supra at 487 (fn. ref. omitted); see Thrift v. Commissioner, 15 T.C. 366, 369 (1950).

With respect to each of the years in issue, if the interest on petitioner's purchase money obligations is treated as "rents" and, thus, is included in "adjusted income from rents", as defined by section 543(b)(3), then

the amount of petitioner's adjusted income from rents constitutes 50 percent or more of the adjusted ordinary gross income and, pursuant to section 543(a)(2), petitioner's rents are not taken into account in computing personal holding company income.  In that event, petitioner does not qualify as a personal holding company in any of the years in issue because the amount of petitioner's personal holding company income would not amount to at least 60 percent of its adjusted ordinary gross income. Sec. 542(a).  Otherwise, if the interest on purchasers' purchase money obligations is not treated as "rents", then petitioner's rental income would be taken into account in computing personal holding company income because the amount of petitioner's adjusted income from rents would constitute less than 50 percent of the adjusted ordinary gross income.  See sec. 543(a)(2)(A).  In addition, petitioner's interest income would be taken into account in computing personal holding company income.  See sec. 543(a)(1).  As a result, in that event, petitioner would qualify as a personal holding company in each of the years in issue.

Petitioner contends that the interest received on its purchase money obligations should be included in adjusted income from rents because "Petitioner was in the real estate operating business buying, improving, renting and

selling commercial real estate property" and "an integral part of Petitioner's business was to finance the sale of the commercial real estate property which it sold to its customers."  According to petitioner, it is "a bona fide operating company" that is "outside of the intent of the penalizing effect of the personal holding company tax." Petitioner argues that its principal officer, Mr. McKelvey, developed customers by first renting a property to the prospective buyer.  Petitioner also argues that "the depressed commercial real [estate] market in Lawton, Oklahoma during the late 1980's and early 1990's" substantially slowed petitioner's business activity by requiring petitioner to hold properties until market conditions improved in the mid 1990's.  After making a property-by-property analysis, petitioner argues that it is "a real estate operating company acquiring commercial properties, improving those properties and selling those properties to buyers which it has located and nurtured as customers."  Finally, petitioner argues that it has consistently engaged in the business of "acquiring, improving, leasing and selling property to its established customers."

Petitioner argues that if it had held all of the property as rental property, "then clearly its rental income would have exceeded 50% of its adjusted ordinary

gross income and not been treated as personal holding company subject to personal holding company tax." According to petitioner, respondent is seeking to impose personal holding company tax on petitioner because "petitioner changed the nature of this income from rental income to interest income by selling the property to its rental customers and other customers". Petitioner contends that this case "is exactly the reason that Congress provided in I.R.C. § 543(b)(3) that interest income which is derived from mortgages from the sale of property in the ordinary course of business be treated as rental income for the purpose of determining whether rents qualify as personal holding company income."

Respondent argues that the subject properties were held primarily for rental and investment and were not held primarily for sale to customers. Respondent points out that there is no evidence that the properties were actively marketed for sale. To the contrary, except in several instances when petitioner listed a property with a real estate agent, it held the properties for rental but would sell a property if it received an acceptable offer. Respondent notes that petitioner claimed depreciation deductions with respect to each of the subject properties and reported the gains from the sale of all of its properties in a manner that is inconsistent with its

position in this case.  Petitioner reported its sales of real property as "property used in the trade or business", as defined by section 1231(b), and reported the sales as "installment [sales]" as defined by section 453(b).  Thus, petitioner took the position on each of its returns for the years in issue that the properties were not held primarily for sale to customers in the ordinary course of a trade or business.  Respondent argues that petitioner's sales of property have been erratic, that the average holding period of petitioner's properties is 8 years, and that only one property was held for less than 1 year.

Respondent also argues that petitioner's dividends for the year do not equal or exceed the amount by which the nonrent personal holding company income for the year exceeds 10 percent of the ordinary gross income, as required by section 543(a)(2).  For example, respondent notes that petitioner's ordinary gross income for 1989 is $189,941.  Respondent argues that "based on the factual background of this case and testimony offered at trial, petitioner cannot establish that its personal holding company income is less than $18,994."

We agree with respondent that petitioner has not shown that a sufficient number of its purchase money obligations are debts that "represent the price for which real property held primarily for sale to customers in the ordinary course

of its trade or business was sold or exchanged".  Thus, petitioner has not shown that a sufficient amount of its interest income should be treated as rents, such that petitioner's aggregate rental income is excluded from the computation of personal holding company income pursuant to section 543(a)(2).  Accordingly, we agree that petitioner has not overcome respondent's determination that petitioner is a personal holding company.

Petitioner's argument that it is "a bona fide operating company which buys, improves, rents and sells commercial real property" is based upon the testimony of its principal stockholder, Mr. McKelvey, and an overview of petitioner's purchases and sales of property.  Unlike petitioner, we believe that, with several exceptions, petitioner was in the business of developing and holding real property for rental.  This finding is based upon all of the facts and circumstances of this case which suggest that petitioner's activities with respect to each of the subject properties were undertaken for the principal purpose of holding and renting the property and not to sell it.  In this connection, we note the long holding period of most of the properties, petitioner's failure to advertise any property for sale, and petitioner's failure to retain real estate agents, except in several instances.  This finding is also consistent with Mr. McKelvey's statements

to respondent's revenue agent during the audit that petitioner held the properties for rental. On the basis of the record in this case, we cannot find that petitioner has shown that it held real property for sale to customers in the ordinary course of its trade or business.

Our finding that petitioner did not hold the subject properties for sale to customers in the ordinary course of its trade or business is also consistent with the manner in which petitioner reported its sales of real property for Federal income tax purposes. As described above, in each of its returns for the years in issue, petitioner took the position that all of its sales of real properties consisted of "property used in the trade or business" as defined by section 1231(b). That provision specifically excludes, among other things, "property held by the taxpayer primarily for sale to customers in the ordinary course of his trade or business". Sec. 1231(b)(1)(B). Furthermore, petitioner reported all of its sales as "installment sales", as defined by section 453(b). Thus, petitioner took the position in each of the returns in issue that its sales of real property did not include "dealer dispositions"; i.e., "Any disposition of real property which is held by the taxpayer for sale to customers in the ordinary course of the taxpayer's trade or business." Sec. 453(l)(1)(B). Accordingly, based upon all the facts and

circumstances of this case, we find that most of the
properties with respect to which petitioner received
interest income during the years in issue were not
properties held by petitioner for sale to customers in the
ordinary course of its trade or business.  Thus, we find
that petitioner is a personal holding company as defined by
section 542(a), in each of the years in issue, and is
subject to personal holding company tax imposed by section
541, as determined by respondent.

Passive Loss Limitation

The second issue for decision is whether deductions
claimed on petitioner's 1992 return in the amount of
$39,186 and deductions claimed on petitioner's 1993
return in the amount of $51,416 are disallowed under
section 469(a) as passive activity losses.  Resolution
of this issue turns on whether the interest income from
petitioner's purchase money obligations, described
above, is portfolio income because it was not derived
in the ordinary course of a trade or business.  See sec.
469(e)(1)(A)(i)(I); sec. 1.469-2T(c)(3)(i)(A) and (ii),
Temporary Income Tax Regs., 53 Fed. Reg. 5713 (Feb. 25,
1988).  If the interest income is not portfolio income,
as petitioner contends, then it is taken into account in
determining the income or loss from petitioner's rental

real estate activity.  In that event, there is a passive activity gain for both 1992 and 1993, rather than a passive activity loss.  On the other hand, if the interest income is portfolio income, as respondent contends, then it is not taken into account in determining the income or loss from petitioner's rental real estate activity.  Sec. 469(e)(1)(A)(i)(I).  In that event, there are passive activity losses for 1992 and 1993, as computed by respondent.

The parties agree that section 469 does not apply to petitioner after 1993 by reason of the amendment of section 469 that added the special rules for taxpayers in the real property business set forth in section 469(c)(7).  We also note that respondent did not apply section 469 to petitioner's returns for years before 1992.

Petitioner's principal argument is that it was in "the trade or business of acquiring and selling real estate and carrying the mortgages on real property which it sold." Accordingly, petitioner takes the position that "the interest income which it received during taxable years 1992 and 1993 should be included in computing whether or not petitioner incurred a [passive activity] loss from its real estate business during the years in question."  Petitioner relies upon the same arguments described above in connection with its contention that its interest income is

includable in adjusted income from rents as defined by section 543(b)(3). That is, petitioner contends that the subject interest income was paid on debts that represent the price for which real property held primarily for sale to customers in the ordinary course of its trade or business was sold or exchanged.

Respondent argues that petitioner is not in the business of selling real estate. Therefore, according to respondent, the subject interest income received from the installment sale of real estate is portfolio income that is not taken into account in computing the net income or loss from petitioner's rental activity, pursuant to section 469(e)(1)(A)(i)(I). Respondent points out that gains from the sale or exchange of passive activity property is properly includable in computing income or loss from a passive activity but that "interest received as installment sales of real estate represents portfolio income, which is nonpassive." In support, respondent cites section 1.469-2T(c)(3)(iv), Example (1), Temporary Income Tax Regs., 53 Fed. Reg. 5714 (Feb. 25, 1988), which states as follows:

> Example (1). A, an individual engaged in the trade or business of farming, disposes of farmland in an installment sale. A is not engaged in a trade or business of selling farmland. Therefore, A's interest income from

the installment note is not gross income derived
in the ordinary course of a trade or business.

Alternatively, petitioner argues that, even assuming that petitioner's interest income is treated as portfolio income, respondent has incorrectly allocated all of petitioner's business expenses to its rental income and, thereby, respondent has overstated the amount of the deductions that are disallowed under section 469. Set forth below are schedules that show the allocation of expenses made in the notice of deficiency, the allocation of expenses that petitioner contends is appropriate, respondent's allocation, and the difference between the two allocations:

| Allocation | Allocation of Expenses for 1992 | Notice of Deficiency | Petitioner's Allocation | Respondent's Difference |
|---|---|---|---|---|
| Rental receipts | $48,633.00 | $48,633.00 | $48,633.00 | -0- |
| Capital gain, installment sales | 10,364.00 | 10,364.00 | 10,364.00 | -0- |
| Income from rental activity | 58,997.00 | 58,997.00 | 58,997.00 | -0- |
| Officer compensation | 39,750.00 | 14,906.25 | 39,750.00 | ($24,843.75) |
| Auto expense | 1,417.00 | 531.38 | 1,417.00 | (885.62) |
| Insurance | 1,699.00 | 1,699.00 | 1,699.00 | -0- |
| Interest | 8,136.00 | 8,136.00 | 8,136.00 | -0- |
| Labor | 5,869.00 | 5,869.00 | 5,869.00 | -0- |
| Legal and accounting | 2,096.00 | 692.52 | 692.52 | -0- |
| Miscellaneous | 627.00 | 207.16 | 627.00 | (419.84) |
| Repairs and maintenance | 2,043.00 | 2,043.00 | 2,043.00 | -0- |
| Supplies | 389.00 | 128.53 | 389.00 | (260.47) |
| Taxes | | | | |
| Payroll | 3,267.88 | 1,225.46 | 3,267.88 | (2,042.42) |
| Real estate | -0- | -0- | -0- | -0- |
| Franchise/Income | 5,383.78 | 1,778.80 | 1,778.80 | -0- |
| Utilities and telephone | 395.00 | 130.50 | 395.00 | (264.50) |
| Yard work and mowing | 3,590.00 | 3,590.00 | 3,590.00 | -0- |

| | | | |
|---|---|---|---|
| Management fees | -0- | -0- | -0- | -0- |
| Depreciation | 23,520.00 | 23,520.00 | 23,520.00 | -0- |
| Total expenses | 98,182.66 | 64,457.60 | 93,174.20 | (28,716.60) |
| Loss from rental activity | (39,185.66) | (5,460.60) | (34,177.20) | |

| | | Notice of | Petitioner's | Respondent's |
|---|---|---|---|---|
| Allocation | Allocation of Expenses for 1993 Difference | Deficiency | | Allocation |
| Rental receipts | $42,775.00 | $42,775.00 | $42,775.00 | -0- |
| Capital gain, installment sales | 11,279.00 | 11,279.00 | 11,279.00 | -0- |
| Income from rental activity | 54,054.00 | 54,054.00 | 54,054.00 | -0- |
| Officer compensation | 39,750.00 | 14,906.25 | 39,750.00 | ($24,843.75) |
| Auto expense | 1,456.00 | 546.00 | 1,456.00 | (910.00) |
| Insurance | 1,913.00 | 1,913.00 | 1,913.00 | -0- |
| Interest | 3,964.00 | 3,964.00 | 3,964.00 | -0- |
| Labor | 6,698.00 | 6,698.00 | 6,698.00 | -0- |
| Legal and accounting | 1,500.00 | 480.60 | 480.60 | -0- |
| Miscellaneous | 1,321.00 | 423.25 | 1,321.00 | (897.75) |
| Repairs and maintenance | 826.00 | 826.00 | 826.00 | -0- |
| Supplies | 171.00 | 54.79 | 171.00 | (116.21) |
| Taxes | | | | |
|   Payroll | 3,162.73 | 1,186.02 | 3,162.73 | (1,976.71) |
|   Real estate | 4,996.78 | 4,996.78 | 4,996.78 | -0- |
|   Franchise/Income | 6,381.90 | 2,044.76 | 2,044.76 | -0- |
| Utilities and telephone | 517.00 | 165.65 | 517.00 | (351.35) |
| Yard work and mowing | 2,848.00 | 2,848.00 | 2,848.00 | -0- |
| Management fees | 4,100.00 | 1,313.64 | 4,100.00 | (2,786.36) |
| Depreciation | 25,868.00 | 28,520.00 | 25,868.00 | 2,652.00 |
| Total expenses | 105,473.41 | 70,886.74 | 100,116.87 | (29,230.13) |
| Loss from rental activity | (51,419.41) | (16,832.74) | (46,062.87) | |

Petitioner argues that its expenses for officer compensation, automobile, and payroll taxes which relate entirely to Mr. McKelvey's employment should be allocated between petitioner's rental and sales activities in accordance with Mr. McKelvey's testimony that he spent an average of 25 hours per week or 62.5 percent of his time

(25/40) "searching for property to buy and customers to which to sell his property."  Petitioner also argues that its expenses for miscellaneous, supplies, utilities and telephone, legal and accounting, and franchise and income taxes should be allocated to petitioner's rental activity in the same ratio as petitioner's rental income bears to total income; i.e., 33.04 percent in 1992 and 32.04 percent in 1993.  Petitioner computes those percentages as follows:

|  | 1992 | Percent | 1993 | Percent |
|---|---|---|---|---|
| Rental income | $58,997.34 | 33.04 | $54,054.00 | 32.04 |
| Interest income | 119,573.90 | 66.96 | 114,634.44 | 67.96 |
| Total income | 178,571.24 | 100.00 | 168,688.44 | 100.00 |

Respondent rejects petitioner's assertion that 62.5 percent of Mr. McKelvey's salary, the payroll tax attributable thereto, and the expense for the automobile furnished to Mr. McKelvey should be treated as nonpassive expenses that can offset portfolio income.  Respondent argues that neither collecting monthly note payments nor looking for additional properties to purchase justifies petitioner's allocation.  As to the former, respondent points to Mr. McKelvey's testimony that he spends only 1 day per month collecting note payments from his buyers.  As to the latter, respondent points out that petitioner did not purchase or sell any real property during 1992 and 1993 and argues that the estimate of the amount of time spent by

Mr. McKelvey looking for additional properties, i.e., 25 to 30 hours per week, is not reasonable.

Respondent also rejects petitioner's contention that the expenses for miscellaneous items, supplies, and utilities and telephone should be allocated to petitioner's rental activity in the same ratio as petitioner's rental activity bears to total income. Respondent argues that there is no factual basis to allocate these expenses to an activity other than petitioner's rental activity in view of the fact that petitioner made no purchase or sale of property during 1992 or 1993 and the fact that petitioner's actions, taken through Mr. McKelvey, were focused on managing and maintaining petitioner's rental properties. Furthermore, respondent notes that there is no evidence to establish the nature of certain expenses, such as the miscellaneous expenses. Finally, respondent accepts petitioner's position regarding the reallocation of petitioner's legal and accounting expenses, franchise taxes, and income taxes.

The general rule regarding the duration of temporary regulations as set forth in section 7805(e)(2) provides that any temporary regulation expires within 3 years after the date of issuance. In general, this 3-year limitation applies to any regulation issued after November 20, 1988. In this case, we note that section 1.469-2T, Temporary

Income Tax Regs., 53 Fed. Reg. 5711 (Feb. 25, 1988), was initially adopted on February 19, 1988. T.D. 8175, 1988-1 C.B. 191. Although amendments to section 1.469-2T, Temporary Income Tax Regs., supra, have occurred since adoption, the specific subsections relied upon by respondent and cited herein have not changed. Therefore, because section 1.469-2T, Temporary Income Tax Regs., supra, was promulgated before section 7805(e)(2) became effective, it is not subject to the 3-year limitation on temporary regulations. Accordingly, section 1.469-2T is valid despite its temporary form.

The principal issue raised by petitioner is whether the subject interest income is taken into account as passive activity gross income, as defined by section 1.469-2T(c)(1), Temporary Income Tax Regs., 53 Fed. Reg. 5711 (Feb. 25, 1988), or whether the subject income qualifies as portfolio income which is specifically excluded from passive activity gross income, sec. 1.469-2T(c)(3)(i), Temporary Income Tax Regs., supra. Portfolio income includes all gross income, other than income derived in the ordinary course of a trade or business (as defined by section 1.469-2T(c)(3)(ii)), Temporary Income Tax Regs., supra, that is attributable to several items, including interest. Sec. 1.469-2T(c)(3)(i)(A), Temporary Income Tax Regs., supra. The legislative history of section 469

explains why portfolio income is not taken into account in determining the income or loss from a passive activity as follows:

> Portfolio investments ordinarily give rise to positive income, and are not likely to generate losses which could be applied to shelter other income. Therefore, for purposes of the passive loss rule, portfolio income generally is not treated as derived from a passive activity, but rather is treated like other positive income sources such as salary. To permit portfolio income to be offset by passive losses or credits would create the inequitable result of restricting sheltering by individuals dependent for support on wages or active business income, while permitting sheltering by those whose income is derived from an investment portfolio.

S. Rept. 99-313, at 728 (1986), 1986-3 C.B. (Vol. 3) 1, 728.

We agree with respondent that petitioner has not shown that it was in the trade or business of selling real properties. Rather, petitioner's business was developing and holding real property for rental. Based upon that finding, we agree with respondent that the interest received by petitioner was "not derived in the ordinary course of a trade or business" and is not taken into account in determining the income or loss from petitioner's rental activity. See sec. 469(e)(1)(A)(i)(I). This finding is based upon all of the facts and circumstances of this case and is consistent with Mr. McKelvey's statements

to respondent's agent during the audit of petitioner's returns. On the other hand, petitioner's argument is inconsistent with petitioner's reporting of its real property sales using the installment method and, in effect, representing that none of those sales involved a "disposition of real property which is held by the taxpayer for sale to customers in the ordinary course of the taxpayer's trade or business." See sec. 453(l)(1)(B), (b)(2)(A).

We also agree with respondent regarding the allocation of petitioner's expenses. Respondent accepts petitioner's position with respect to the allocation of legal and accounting expenses, franchise taxes, and income taxes. Accordingly, we need not discuss those expenses. In the case of Mr. McKelvey's compensation, the payroll tax attributable thereto, and the expense for the automobile furnished to Mr. McKelvey, we agree with respondent that petitioner's proposed allocation is not reasonable in light of Mr. McKelvey's testimony regarding the small amount of time he spent collecting note payments and the fact that petitioner did not purchase or sell any real estate during 1992 or 1993. Similarly, petitioner has failed to establish a factual basis to allocate its miscellaneous expenses, its expenses for supplies, and its expenses for utilities and telephone. This is particularly true in

light of the fact that most of petitioner's actions involve managing and maintaining petitioner's rental properties.

Addition to Tax Under Section 6662(a)

The third issue for decision is whether petitioner is subject to the accuracy-related penalty under section 6662(a).  In the notice of deficiency, respondent determined that the entire underpayment for each of the years in issue is attributable to a substantial understatement of income tax.  See sec. 6662(b)(2).  Thus, in the notice of deficiency, respondent added 20 percent of the underpayment to the tax determined with respect to each of the years in issue.  See sec. 6662(a).

Generally, there is a substantial understatement of income tax for any taxable year if the amount of the understatement exceeds the greater of 10 percent of the tax required to be shown on the return for the taxable year or $5,000 ($10,000 in the case of a corporation other than an S corporation or a personal holding company).  Sec. 6662(d)(1)(A).  In this context, the term "understatement" is defined to mean the excess of the amount of the tax required to be shown on the return over the amount of the tax imposed which is shown on the return, reduced by any rebate.  Sec. 6662(d)(2).  In determining whether an understatement is substantial, the amount of the

understatement is reduced by any portion attributable to an item if there is or was substantial authority for the taxpayer's treatment of the item, or if the relevant facts affecting the item's tax treatment are adequately disclosed in the return or in a statement attached thereto.  Sec. 6662(d)(2)(B).

Petitioner argues that for each of the years in issue the understatement is reduced, pursuant to section 6662(d)(2)(B)(ii), by the portion thereof which is attributable to the personal holding company tax adjustment because that "issue was adequately disclosed and 'set forth' in each of the tax returns filed for the years 1989 through 1994."  In the case of petitioner's 1994 return, petitioner points to the fact that there is attached thereto a Schedule PH, U.S. Personal Holding Company (PHC) Tax, setting forth petitioner's position that it is not subject to the tax, accompanied by various materials that discuss personal holding companies and a document entitled "Note #1 - Schedule PH Explanation" that states as follows:

> CHAR-LIL CORPORATION INCOME CONSISTS OF INTEREST INCOME FROM INSTALLMENT SALES OF REAL PROPERTY DERIVED IN THE ORDINARY COURSE OF TRADE OR BUSINESS AND RENTAL INCOME FROM REAL ESTATE OWNED BY THE CORPORATION.
>
> CHAR-LIL CORPORATION'S ONLY BUSINESS IS THAT OF REAL ESTATE OPERATION, INVOLVING SALES, PURCHASES, RENTALS, ETC.  THE INTEREST INCOME THAT IS RECEIVED FROM INSTALLMENT SALES OF REAL

ESTATE IS TO BE TREATED AS ADJUSTED INCOME FROM
RENTS, AS PER CODE SEC. 543(A)(2) AND (B)(3).

"""SEE ATTACHED"""

CHAR-LIL CORPORATION'S ADJUSTED INCOME FROM
RENTS, AS DEFINED MEETS THE 50% TEST AND THE 10%
TEST TO BE EXCLUDABLE FROM PERSONAL HOLDING
COMPANY INCOME, AS PER CODE SECS. 541-547.

IT IS OUR CONCLUSION THAT CHAR-LIL CORPORATION
IS NOT SUBJECT TO PERSONAL HOLDING COMPANY TAX
BECAUSE IT DOES NOT MEET THE 60% TEST ON PERSONAL
HOLDING COMPANY INCOME!

"""SEE ATTACHED"""

In the case of petitioner's returns for 1989 through 1993, petitioner argues that there was adequate disclosure because the personal holding company tax issue is apparent from the face of each return.  In support of that argument, petitioner points to the testimony of respondent's revenue agent, who stated that he identified the issue based upon a review of petitioner's 1993 return.  The agent's testimony on cross-examination on this point is as follows:

> Q  Mr. Neubauer, you testified that, at the
> time you began the audit, you identified the
> personal holding company issue as a subject of
> your audit.  Is that correct?
>
> A  Potentially, the personal holding company
> tax could apply.
>
> Q  What--on what basis did you make that
> identification of that audit issue?
>
> A  Just the--just with the comparison of the
> interest income versus the rents.

Q  Is that based on a review of the returns themselves?

A  Exactly.  That's all I had was just the-- I believe it was the 1993 return that the audit began with.

Q  That's the only return you had looked at that time?

A  Yes.  I believe that is correct.  It was 1993 or 1992.  1994 had not been filed.  I believe I began with the 1993 return.  It's in the record if it needs to be verified.

Respondent's position is that the exception for adequate disclosure provided in section 6662(d)(2)(B)(ii) does not apply and "the penalty should be sustained in full for each of the years 1989 through 1994."  Respondent asks the Court to reject petitioner's argument that the personal holding company issue is apparent from the face of the returns for 1989 through 1993.  Respondent does not provide an analysis of the face of the returns but argues that the ability of respondent's agent to immediately spot the personal holding company tax issue does not mean that the issue was adequately disclosed on the returns, within the meaning of section 6662(d)(2)(B)(ii).  Respondent does not address the disclosure made in petitioner's 1994 return.

Respondent also argues:

Even if the Court were to conclude that the relevant facts affecting the item's tax treatment were adequately disclosed in the returns, no evidence has been offered that the petitioner had

a reasonable basis for the failure to report its liability for the personal holding company tax on the returns.

In this connection, respondent notes that petitioner's return preparer, Mr. Billy Caldwell, acknowledged that he "was not aware of the personal holding company tax issue at all before it was raised by respondent." In effect, respondent argues that petitioner could have had no reasonable basis for its failure to report personal holding company tax.

To begin with, we note that petitioner does not advance any reason why the portion of the understatement for each of the years 1992 and 1993 that is attributable to the passive loss adjustment, described above, is not a substantial understatement of income tax that is subject to the accuracy-related penalty. Accordingly, we hereby sustain respondent's determination of the accuracy-related penalty on the portion of the underpayment in 1992 and 1993 which is attributable to the passive loss adjustment.

The statutory provision under which an understatement is reduced with respect to any item if the relevant facts are adequately disclosed, section 6662(d)(2)(B)(ii), was amended effective for returns due after December 31, 1993. Omnibus Budget Reconciliation Act of 1993, Pub. L. 103-66,

sec. 13251, 107 Stat. 531. After the amendment, section 6662(d)(2)(B)(ii) provides as follows:

> (B) Reduction for understatement due to position of taxpayer or disclosed item.-- The amount of the understatement under subparagraph (A) shall be reduced by that portion of the understatement which is attributable to--
>
>      \*   \*   \*   \*   \*   \*   \*
>
> (ii) any item if--
>
> > (I) the relevant facts affecting the item's tax treatment are adequately disclosed in the return or in a statement attached to the return, and
> >
> > (II) there is a reasonable basis for the tax treatment of such item by the taxpayer.

Thus, in the case of returns for tax years 1993 and 1994, the tax treatment of an item must be adequately disclosed in the return or in an attached statement, and there must be a reasonable basis for the tax treatment. Sec. 1.6662-4(e) and (f), Income Tax Regs. The conference report issued in connection with this amendment, H. Conf. Rept. 103-213, at 669 (1993), 1993-3 C.B. 393, 547, describes the intent of the conferees concerning the meaning of the phrase "reasonable basis" as follows:

> The conferees intend that "reasonable basis" be a relatively high standard of tax reporting, that is, significantly higher than "not patently improper." This standard is not satisfied by a

return position that is merely arguable or that is merely a colorable claim.

Furthermore, regulations promulgated under section 6662, section 1.6662-4(f), Income Tax Regs., provide the following methods for making adequate disclosure:

(f) Method of making adequate disclosure--

(1) Disclosure statement. Disclosure is adequate with respect to an item (or group of similar items, such as amounts paid or incurred for supplies by a taxpayer engaged in business) or a position on a return if the disclosure is made on a properly completed form attached to the return or to a qualified amended return (as defined in § 1.6664-2(c)(3)) for the taxable year. In the case of an item or position other than one that is contrary to a regulation, disclosure must be made on Form 8275 (Disclosure Statement); in the case of a position contrary to a regulation, disclosure must be made on Form 8275-R (Regulation Disclosure Statement).

(2) Disclosure on return. The Commissioner may by annual revenue procedure (or otherwise) prescribe the circumstances under which disclosure of information on a return (or qualified amended return) in accordance with applicable forms and instructions is adequate. If the revenue procedure does not include an item, disclosure is adequate with respect to that item only if made on a properly completed Form 8275 or 8275-R, as appropriate, attached to the return for the year or to a qualified amended return.

During the years in issue, the annual revenue procedures issued pursuant to the above regulation did not include liability for personal holding company tax as an item with respect to which disclosure could be made on a taxpayer's

return.  See Rev. Proc. 89-11, 1989-1 C.B. 797; Rev. Proc.

90-16, 1990-1 C.B. 477; Rev. Proc. 91-19, 1991-1 C.B. 523;

Rev. Proc. 92-23, 1992-1 C.B. 737; Rev. Proc. 93-33, 1993-2

C.B. 470; Rev. Proc. 94-36, 1994-1 C.B. 682; Rev. Proc. 94-

74, 1994-2 C.B. 823.

Before the 1993 amendment, section 6662(d)(2)(B)(ii)

provided as follows:

> (B) Reduction for understatement due to
> position of taxpayer or disclosed item.-- The
> amount of the understatement under subparagraph
> (A) shall be reduced by that portion of the
> understatement which is attributable to--
>
> *    *    *    *    *    *    *
>
> (ii) any item with respect to
> which the relevant facts affecting the
> item's tax treatment are adequately
> disclosed in the return or in a
> statement attached to the return.

Thus, for tax years 1989 through and including 1992, the

statute did not impose the reasonable basis requirement.

However, regulations promulgated under section 6662 to

implement the adequate disclosure exception, former section

1.6662-4(e) and (f), Income Tax Regs., provided as follows:

> (e) Disclosure of certain information--
> (1) Effect of adequate disclosure.  Items for
> which there is adequate disclosure as provided
> in this paragraph (e) and in paragraph (f) of
> this section are treated as if such items were
> shown properly on the return for the taxable year
> in computing the amount of the tax shown on the
> return.  Thus, for purposes of section 6662(d),

the tax attributable to such items is not included in the understatement for that year.

(2) Circumstances where disclosure will not have an effect. The rules of paragraph (e)(1) of this section do not apply where the item or position on the return is--

(i) Frivolous (as defined in § 1.6662-3(b)(3));

(ii) Attributable to a tax shelter (as defined in section 6662(d)(2)(C)(ii) and paragraph (g)(2) of this section); or

(iii) Not properly substantiated, or the taxpayer failed to keep adequate books and records with respect to the item or position.

(f) Method of making adequate disclosure-- (1) Disclosure statement. Disclosure is adequate with respect to an item (or group of similar items, such as amounts paid or incurred for supplies by a taxpayer engaged in business) or a position on a return if the disclosure is made on a properly completed form attached to the return or to a qualified amended return (as defined in § 1.6664-2(c)(3)) for the taxable year. In the case of an item or position other than one that is contrary to a regulation, disclosure must be made on Form 8275 (Disclosure Statement); in the case of a position contrary to a regulation, disclosure must be made on Form 8275-R (Regulation Disclosure Statement).

(2) Disclosure on return. The Commissioner may by annual revenue procedure (or otherwise) prescribe the circumstances under which disclosure of information on a return (or qualified amended return) in accordance with applicable forms and instructions is adequate. If the revenue procedure does not include an item, disclosure is adequate with respect to that item only if made on a properly completed Form 8275 or 8275-R, as appropriate, attached to the return for the year or to a qualified amended return.

Section 1.6662-3(b)(3), Income Tax Regs., states that a "frivolous" position is one that is "patently improper".

The above provisions of the regulations governing the adequate disclosure exception, former section 1.6662-4(e) and (f), Income Tax Regs., were effective for income tax returns due after December 31, 1991.  Former sec. 1.6662-2(d), Income Tax Regs.  Thus, for 1991 and 1992 returns, the amount of the understatement is reduced with respect to an item if there is adequate disclosure of the item and the tax treatment of the item is not frivolous.

Regarding income tax returns due before the effective date of the initial regulations promulgating rules for making adequate disclosure under section 6662(d)(2)(B)(ii), i.e., income tax returns due before December 31, 1991 (determined without regard to extensions of time for filing), the Internal Revenue Service announced that the rules applicable to section 6661 would be used for determining what constitutes adequate disclosure under section 6662(d)(2)(B).  Notice 90-20, 1990-1 C.B. 328. The regulations under former section 6661 governing the adequate disclosure exception, former section 1.6661-4, Income Tax Regs., provided as follows:

§ 1.6661-4 Disclosure of certain information

(a) In general. Items (other than tax shelter items as defined in § 1.6661-5(c)) for

which there is adequate disclosure are treated as if such items were shown properly on the return for the taxable year in computing the amount of tax for purposes of section 6661, shown on the return.  Thus, the tax attributable to such items is not included in the understatement for the year.  (See paragraph (d)(2) of § 1.6661-2.)  Disclosure is adequate with respect to the tax treatment of an item on a return only if it is made on such return or in a statement attached thereto.  Thus, disclosure with respect to a recurring item, such as the basis of recovery property, made on a return or statement attached thereto for one taxable year is not adequate disclosure with respect to the item for any other taxable year.  See paragraph (d) of this section for special rules relating to disclosure with respect to carrybacks and carryovers.

(b) Disclosure in attached statement--(1) In general.  Disclosure will be adequate with respect to an item (or group of similar items, such as the specific deduction of business bad debts or the deduction of amounts paid or incurred for supplies by a taxpayer engaged in business), if it is made on a properly completed Form 8275 or if it takes the form of a statement attached to the return that includes the following:

(i) A caption identifying the statement as disclosure under section 6661.

(ii) An identification of the item (or group of similar items) with respect to which disclosure is made.

(iii) The amount of the item (or group of similar items).

(iv) The facts affecting the tax treatment of the item (or group of similar items) that reasonably may be expected to apprise the Internal Revenue Service of the nature of the potential controversy con-cerning

the tax treatment of the item (or items).

(2) Disclosure of legal issue. In lieu of setting forth the facts affecting the tax treatment of an item (or group of similar items) in accordance with paragraph (b)(1)(iv) of this section, the taxpayer may set forth a concise description of the legal issue presented by such facts.

(3) Requirement of particularity. Disclosure is not adequate with respect to an item (or group of similar items) if it consists of undifferentiated information that is not arranged in a manner that reasonably may be expected to apprise the Internal Revenue Service of the identity of the item, its amount, and the nature of the potential controversy concerning the item (or items). For example, attachment to the return of an acquisition agreement generally will not constitute adequate disclosure of the issues involved in determining the basis of certain acquired assets.

(c) Disclosure on return. The Commissioner may by revenue procedure prescribe the circumstances in which information provided on the return in accordance with the applicable forms and instructions will be adequate disclosure for purposes of section 6661.

We agree with respondent that petitioner has not established that the understatement for any of the years in issue should be reduced pursuant to section 6662(d)(2)(B)(ii) with respect to the portion of the understatement attributable to the personal holding company tax. A review of each of petitioner's returns for 1989 through 1993 might cause the reviewer to wonder about the application of personal holding company tax, but it would

not apprise the reviewer of the specific nature of petitioner's claim that the interest on its purchase money obligations is includable in adjusted income from rents, such that rents are excluded from the computation of personal holding company income.  Nor would a review of petitioner's returns disclose the relevant facts regarding petitioner's claim that it held real properties for sale to customers in the ordinary course of business, such that the interest income was from "debts" that "represent the price for which real property held primarily for sale to customers in the ordinary course of its trade or business was sold or exchanged by the corporation".  Sec. 543(b)(3). In fact, as discussed above, petitioner's returns report just the opposite.  According to petitioner's returns, its sales of real property involve "property used in the trade or business", as defined by section 1231(b), and "install-ment sales", as defined by section 453(b).  Thus, according to petitioner's returns its sales of real property did not involve real property held for sale to customers in the ordinary course of petitioner's trade or business.  See secs. 453(l)(1)(B), 1231(b)(1)(B).

Moreover, in the case of petitioner's returns for 1989 through 1993, regulations promulgated under section 6662(d)(2)(B)(ii) and former section 6661(b)(2)(B)(ii) set forth the method of making an adequate disclosure.

See sec. 1.6662-4(f), Income Tax Regs., and former sec. 1.6661-4, Income Tax Regs.  As to these years, petitioner claims that sufficient information was set forth in each of the returns to constitute adequate disclosure of its liability for personal holding company tax.  The governing regulations, however, require explicit and detailed disclosure in order for the disclosure to be considered adequate.  Sec. 1.6662-4(f), Income Tax Regs.; former sec. 1.6661-4(b), Income Tax Regs.  Petitioner fails to make any reference to the operative regulations.  Petitioner does not explain how the purported disclosures on each of the returns for 1989 through 1993 satisfy the requirements of the regulations, nor does petitioner present any reason to conclude that the regulations do not apply.

Petitioner's 1994 return contains a Schedule PH, U.S. Personal Holding Company (PHC) Tax, and other information explicitly setting forth petitioner's position that it is not subject to personal holding company tax.  Even accepting petitioner's position that the attachments to its 1994 return constitute adequate disclosure under section 6662(d)(2)(B)(ii), petitioner has made no attempt to show that it had a "reasonable basis" for that position.

Upon consideration of the foregoing,

Decision will be entered

under Rule 155.